UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEATHER MAXIN, individually and on behalf of all others similarly situated,<br><br>         Plaintiff,<br><br>v.<br><br>RHG & COMPANY, INC.,<br><br>         Defendant. | Case No.: 16CV2625 JLS (BLM)<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>(ECF No. 6) |

  Presently before the Court is Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Prelim. Settlement Mot."). (ECF No. 6.) Because the Preliminary Settlement Motion is unopposed, the Court vacated oral argument on the matter and took it under submission without oral argument pursuant to Civil Local Rule 7.1(d). (ECF No. 10.) After reviewing Plaintiff's arguments and the law, the Court concludes that the settlement is fundamentally fair, reasonable, and adequate, and therefore **GRANTS** the Preliminary Settlement Motion.

## GENERAL BACKGROUND

  Plaintiff has filed a Class Action Complaint ("CAC") for damages and injunctive relief. (ECF No. 1.) Plaintiff alleges that Defendant—"an American 'pharmaceutical grade and professional strength supplements' manufacturer that conducts business through

1  Internet sales and mail orders, and a numerous pharmaceutical and supplement stores
2  within the United States," (Compl. ¶ 11)—"made, and continues to make, affirmative
3  misrepresentations regarding its Products, including the Vitamin D3 product purchased by
4  Plaintiff, it manufactures, markets and sells[,]" (*id.* ¶ 12). Specifically, Plaintiff alleges that
5  "Defendant packaged, advertised, marketed, promoted, and sold its Products as 'Made in
6  the USA,' " (*id.*), in violation of California Civil Code section 1750, *et seq.*, (*id.* ¶¶ 50–
7  62); California Business & Professions Code section 17533.7, (*id.* ¶¶ 63–68); California
8  Business and Professions Code section 17200, *et seq.*, (*id.* ¶¶ 69–84).

9  In June 2015, Plaintiff sent Defendant a notice letter pursuant to California Civil
10 Code § 1782. (Kazerounian Decl. Ex. 1 ("Settlement Agreement"), § II.C, ECF No. 6-3.)
11 The following month, "Plaintiff sent Defendant a draft of the proposed complaint, alleging
12 claims" under the CLRA, the UCL, and the FAL. (Prelim. Settlement Mot. 3). In October,
13 the Parties "participated in a full day of mediation" before the Honorable Leo S. Papas, a
14 retired Federal Magistrate Judge, and Defendant later produced information "in response
15 to informal discovery requests by Plaintiff's counsel, including a confirmatory discovery
16 request in the form of special interrogatories." (*Id.*) Specifically, "Defendant produced
17 figures regarding the total sales of the Products, the approximate class size, Defendant's
18 finances and other information that help determine the appropriate notice for the Class."
19 (*Id.*) "Based upon the investigation, analysis, and discovery conducted by Class Counsel,
20 as well as information obtained through arm's-lengths negotiations at the time of
21 mediation, the Parties have agreed to settle the claims in the Action on a nationwide basis
22 under the terms and conditions memorialized in th[e] [Settlement] Agreement." (*Id.*)

### SETTLEMENT TERMS

24 The Parties have submitted a comprehensive settlement document with
25 approximately twenty-two pages of substantive terms, (*see generally* Settlement
26 Agreement), and several methods of class notice, (ECF Nos. 6-4 (long-form notice), 6-5
27 (claim form), 6-9 (postcard notice), 6-10 (short-form notice), 6-11 (pharmacy notice)). The
28 Settlement Class is defined as:

> All Persons who purchased one or more of the Products [i.e., those "that contained an unqualified 'Made in the USA' label or were otherwise represented as being 'Made in the USA,' including on Defendant's website, brochures, and/or any other marketing materials[,]" (Settlement Agreement § III.A.27),] in the United States within the Class Period (i.e., August 1, 2012 through the date the Court issues the Preliminary Approval Order). Excluded from the Class are Defendant, its officers, directors, or employees, and the immediate family members. Also excluded is any judge who may preside over this case and their immediate family members and employees, as well as all persons who are validly excluded from the Settlement.

(Prelim. Settlement Mot. 3; *see also* Settlement Agreement § III.A.9.) This includes approximately 4,665 putative Class Members Defendant has been able to identify as well as "numerous others who purchased Vital Nutrients' products through third party distributors, healthcare practitioners, and other retailers . . . ." (Prelim. Settlement Mot. 3–4.) Defendant estimates that "91% of its sales [are] to healthcare practitioners or distributors" rather than direct-to-consumer sales, (Petrarca Decl. ¶ 2, ECF No. 6-15), and that it "shipped approximately 2,426,024 units of Vital Nutrients products" during the class period, "not all of which contained a 'Made in USA' label, and some of which third parties have confirmed with Certificates of Analysis that they were made in the USA[,]" (*id.* ¶ 3).

The Settlement Agreement provides for a common fund of $900,000 to be used to pay:

> (i) the Cash Awards, (ii) the incentive award to Plaintiff . . . , (iii) the Attorneys' Fees Award, which includes litigation costs of Class Counsel, (iv) costs of administering the notice, the Claims, and the Settlement, and (v) taxes due in connection with the Gross Settlement Fund and Net Settlement Fund prior to distribution to the Class.

(Settlement Agreement § III.B.1.) Class Members will be entitled to anywhere from $6.00 to $150.00. (*See id.* § III.B.2.) "Specifically, Class Members who submit a Valid Claim without Adequate Proof of Purchase shall receive $6.00 per Product, up to a maximum of 5 Products per Person; Class Members who have proof of having purchased more than 5

Products and submit a Valid Claim accompanied by Adequate Proof of Purchase shall receive $6.00 per Product, up to a maximum of 25 Products per Person." (*Id.* § III.B.2.(a)–(b).)

If the combined monetary value of class member claims are in excess of the fund amount then "the amount to each Class Member shall be reduced on a *pro rata* basis." (*Id.* § III.B.1.(d).) If the common fund exceeds the combined monetary value of class member claims, or if there are any unclaimed funds, then the excess "shall be delivered to a *cy pres* recipient selected by the parties and approved by the Court." (*Id.* § III.B.1.(e)–(f).)

Additionally, Defendant has "already commenced shipping its Products with revised labeling that conforms to the terms of the Settlement" and has "deleted any 'Made in USA' representation from its website." (*Id.* § III.B.3(a).) Defendant will continue this course of conduct. (Prelim. Settlement Mot. 4–5.)

## RULE 23 SETTLEMENT CLASS CERTIFICATION

Before granting preliminary approval of a class action settlement agreement, the Court must first determine whether the proposed class can be certified. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) (indicating that a district court must apply "undiluted, even heightened, attention [to class certification] in the settlement context" in order to protect absentees).

Class actions are governed by Federal Rule of Civil Procedure 23. In order to certify a class, each of the four requirements of Rule 23(a) must first be met. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Rule 23(a) allows a class to be certified only if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Next, in addition to Rule 23(a)'s requirements, the proposed class must satisfy the requirements of one of the subdivisions of Rule 23(b). *Zinser*, 253 F.3d at 1186. Here, Plaintiff seeks to certify the Settlement Class under subdivision Rule 23(b)(3), which permits certification if "questions of law or fact common to class members predominate over any questions affecting only individual class members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The Court addresses each of these requirements in turn.

I. **Rule 23(a)(1): Numerosity**

Federal Rule of Civil Procedure 23(a)(1) requires that a class must be "so numerous that joinder of all members is impracticable." "[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer." *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007).

Here, the proposed Settlement Class consists of at least 4,665 individuals, and there are many other potential class members scattered across the nation. (Petrarca Decl. ¶¶ 2–3.) Accordingly, joinder of all members would be impracticable for purposes of Rule 23(a)(1), and the numerosity requirement is therefore satisfied.

II. **Rule 23(a)(2): Commonality**

Federal Rule of Civil Procedure 23(a)(2) requires that there be "questions of law or fact common to the class." Commonality requires that "the class members 'have suffered the same injury.' " *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Here, all common questions revolve around whether Defendant's labeling of its products as "Made in USA" were in violation of California law and negatively impacted

///

the class members. Accordingly, it is appropriate for these issues to be adjudicated on a class-wide basis, and Rule 23(a)(2) is satisfied.

## III.  Rule 23(a)(3): Typicality

To satisfy Federal Rule of Civil Procedure 23(a)(3), Plaintiff's claims must be typical of the claims of the Class. The typicality requirement is "permissive" and requires only that Plaintiff's claims "are reasonably coextensive with those of absent class members." *Hanlon*, 150 F.3d at 1020. "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.' " *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). "[C]lass certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.' " *Id.* (citation omitted).

Here, Plaintiff is an individual whose claims allegedly arise out of Defendant's same underlying "Made in USA" product labeling as those claims pertaining to the proposed Settlement Class. (Compl. ¶¶ 14–17.) Accordingly, Plaintiff's claims are typical of the claims of the members of the proposed Settlement Class, thus satisfying Rule 23(a)(3).

## IV.  Rule 23(a)(4): Adequacy

Federal Rule of Civil Procedure 23(a)(4) requires that the named representatives fairly and adequately protect the interests of the class. "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of judgment which binds them." *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940)). To determine legal adequacy, the Court must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.*

Here, there is no reason to believe that the named representative and Class Counsel have any conflict of interest with the proposed Settlement Class members. (*See* Maxin

Decl. ¶ 10, ECF No. 6-13; Kazerouninan Decl. ¶¶ 36–38, ECF No. 6–2.) There is also no reason to believe that the named representative and Class Counsel have thus far failed to vigorously investigate and litigate this case. Plaintiff has retained competent counsel, who has conducted pre-suit investigation, research, and informal discovery in this case. (Prelim. Settlement Mot. 3.) Furthermore, Class Counsel have significant class action litigation experience, are knowledgeable about the applicable law, and will continue to commit their resources to further the interests of the Class. (Kazerounian Decl. ¶¶ 46–61.) Accordingly, the named representative and Class Counsel adequately represent the proposed Settlement Class members, and Rule 23(a)(4)'s adequacy requirement is met.

## V. Rule 23(b)(3)

Federal Rule of Civil Procedure 23(b)(3) permits certification if "questions of law or fact common to class members predominate over any questions affecting only individual class members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### A. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. "Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022.

Here, the common issue of whether Defendant's product labeling was in violation of California law predominates over any individual issues such as the extent to which individual class members relied on the labeling in deciding to purchase the products and which of Defendant's specific products Class Members purchased. (*See* Prelim. Settlement Mot. 13.) Further, for purposes of settlement, Class Members are not required to prove any evidentiary or factual issues that could arise in litigation. Accordingly, the predominance requirement of Rule 23(b)(3) is satisfied.

///

///

***B.     Superiority***

The final requirement for certification pursuant to Federal Rule of Civil Procedure 23(b)(3) is "that a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." The superiority inquiry requires the Court to consider the four factors listed in Rule 23(b)(3):

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

*See also Zinser*, 253 F.3d at 1190. A court need not consider the fourth factor, however, when certification is solely for the purpose of settlement. *See True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1066 n.12 (C.D. Cal. 2010); *see also Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial."). The superiority inquiry focuses " 'on the efficiency and economy elements of the class action so that cases allowed under [Rule 23(b)(3)] are those that can be adjudicated most profitably on a representative basis.' " *Zinser*, 253 F.3d at 1190 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1780, at 562 (2d ed. 1986)). A district court has "broad discretion" in determining whether class treatment is superior. *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975).

Here, Class Members' claims involve the same issues arising from the same factual bases. If Class Members' claims were considered on an individual basis, potentially thousands of cases would follow a similar trajectory, and each would come to a similar result. Furthermore, individual cases would consume a significant amount of the Court's and the Class Members' resources. It is also likely that Class Members would not pursue

litigation on an individual basis due to the high costs of pursuing individual claims. The interests of the Settlement Class Members in individually controlling the litigation are minimal, especially given that Defendant's same product labeling would be at issue. Given all of the above, class treatment is the superior method of adjudicating this controversy, and the superiority requirement of Rule 23(b)(3) is met.

## VI. Conclusion

For the reasons stated above, the Court finds certification of the Settlement Class proper under Rule 23(b)(3). Accordingly, the Settlement Class is **CERTIFIED** for settlement purposes only.

## RULE 23 PRELIMINARY FAIRNESS DETERMINATION

Having certified the Settlement Class, the Court must next make a preliminary determination as to whether the proposed settlement is "fair, reasonable, and adequate" pursuant to Federal Rule of Civil Procedure 23(e)(1)(C). Relevant factors to this determination include:

> The strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026. Furthermore, due to the "dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative," any "settlement approval that takes place prior to formal class certification requires a higher standard of fairness." *Id.* Additionally, although in the present case the Court has not been presented with formal applications for class counsel's attorney fees or class service awards, the Court nonetheless considers these potential fees because they form part of the settlement agreement.

/ / /

## I. Strength of Plaintiff's Case

In order to succeed on the merits, Plaintiff would have to prove that Defendant's product labeling violated California law. (*See generally* CAC.) Defendant denies all Plaintiff's allegations, believes it has meritorious defenses to all of Plaintiff's claims, and maintains that its products and all of its representations and labeling were in compliance with all applicable laws. (Settlement Agreement § II.C.) Plaintiff's Counsel, however, believes Plaintiff has a strong case and that the $900,000 proposed settlement is "in part due to the strength of Plaintiff's claims." (Prelim. Settlement Mot. 19; *see also* Kazerounian Decl. ¶¶ 42–43.) Additionally, the Settlement Agreement is the result of arm's-length negotiations conducted over several months, including each Party's individual discovery and valuation of the case and one full-day mediation session before an experienced mediator. (Prelim. Settlement Mot. 1–3.) Given this disagreement and neutral third-party evaluation of the same, the Court thus finds that this factor weighs in favor of the $900,000 settlement being fair, reasonable, and adequate.

## II. Risk, Expense, Complexity, and Likely Duration of Further Litigation

Were the case to proceed to further litigation rather than settlement, the Parties would each bear substantial risk and a strong likelihood of protracted and contentious litigation. Even though the Parties have agreed to settle this action, they fundamentally disagree regarding the validity of Plaintiff's claims. (Settlement Agreement § II.) Additionally, the Parties document a number of risks in litigating Plaintiff's claims—including an expert survey assessment "that the 'Made in USA' language was not material to [the majority of] class members[,]" (*id.* § II.D)—and thus argue that the present Settlement affords class members at least some compensation where there might be none. Indeed, the fact that Defendant disputes all aspects of Plaintiff's claims, and might contend that the California statutes have recently been amended "in a way that [could] diminish[] the value of the claims asserted in this Action[,]" (Prelim. Settlement Mot. 20), suggests that these issues would be vigorously (and therefore costly) litigated were there to be

/ / /

further litigation. Given the foregoing, this factor weighs in favor the settlement being fair, reasonable, and adequate.

### III. Risk of Maintaining Class Action Status Throughout Trial

The Parties dispute whether the classes can be validly certified in the absence of the Settlement Agreement. (*See id.* at 19–20.) Implicit in this disagreement is the likelihood of initial challenges to class certification and the potential for decertification motions even if class status is granted. Weighed against the fact that Defendant does not object to a finding that the class elements are met for purposes of this settlement, this factor also weighs in favor of the settlement being fair, reasonable, and adequate.

### IV. Amount Offered in Settlement

Defendant has agreed to pay $900,000 to settle this lawsuit. This amounts to potential value to each class member (i.e., $6–$150 per member) that "is arguably more than the value representing a reduction in Defendant's product's value due to the alleged false advertising, which would otherwise be highly contested and require expert testimony to determine." (*Id.* at 20.) Further, the value offered compares favorably to many other "similarly approved settlements, some of which only offer vouchers or discounts." (*Id.*; *see id.* n.4 (collecting similar, lower-award-value cases that were approved).) Although there are a great many potential class members—and thus great potential recovery—given the foregoing and the slim chance of Class Members otherwise individually seeking recovery, this factor nonetheless weighs in favor of settlement.

### V. Extent of Discovery Completed and Stage of Proceedings

Prior to the agreed-upon settlement, the Parties engaged in informal discovery, including analysis of Defendant's allegedly non-compliant products and locating putative Class Members from Defendant's sales records. (*Id.* at 1–4; 21–22.) And as discussed, the Parties engaged a neutral third-party mediator who fully examined and discussed with each party the strengths and weakness of each party's case. (*Id.* at 3.) Both Class Counsel and Defense Counsel gained significant knowledge of the relevant facts and law throughout the discovery process and through independent investigation and evaluation. Accordingly, it

appears the Parties have entered into the Settlement Agreement with a strong working knowledge of the relevant facts, law, and strengths and weaknesses of their claims and defenses. Given all of the above, this factor weighs in favor of the proposed settlement being fair, reasonable, and adequate.

## VI.     Experience and Views of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). And here, Class Counsel believes the Settlement Agreement is fair, reasonable, adequate, and in the best interest of the Settlement Class. (*Id.* at 22.) Furthermore, in the present case the presumption of reasonableness is warranted based on Class Counsel's expertise in complex litigation, familiarity with the relevant facts and law, and significant experience negotiating other class and collective action settlements. (Kazerounian Decl. ¶¶ 46–61.) Given the foregoing, and according the appropriate weight to the judgment of these experienced counsel, this factor weighs in favor the proposed settlement being fair, reasonable, and adequate.

## VII.    Settlement Attorney Fees Provision

In the Ninth Circuit, a district court has discretion to apply either a lodestar method or a percentage-of-the-fund method in calculating a class fee award in a common fund case. *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002). When applying the percentage-of-the-fund method, an attorneys' fees award of "twenty-five percent is the 'benchmark' that district courts should award . . . ." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)); *Fischel*, 307 F.3d at 1006. However, a district court "may adjust the benchmark when special circumstances indicate a higher or lower percentage would be appropriate." *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 379 (citing *Six (6) Mexican Workers*, 904 F.2d at 1311). "Reasonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel*, 307 F.3d at 1007.

In the present case, the Settlement Agreement specifies that Defendant will not oppose Class Counsel's request to the Court for approval of attorney fees in the amount of $270,000. (Settlement Agreement § III.I.) This would be approximately thirty percent of the $900,000 common fund— five percent more than the Ninth Circuit benchmark. Although the Court does not conclude that the attorney fee provision is fatal to preliminary approval of the settlement, the Court notes that counsel will need to address in their formal attorney fee application any arguments supporting the heightened award. Additionally, the Court will carefully scrutinize any class member objections to the proposed thirty-percent award.

## VIII. Class Representative Service Award Provision

The Ninth Circuit recognizes that named plaintiffs in class action litigation are eligible for reasonable incentive payments. *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). The district court must evaluate each incentive award individually, using " 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . .[and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . .' " *Id.* (citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

In the present case, the Settlement Agreement provides an incentive award of up to $5,000 to the Class Representative. (Settlement Agreement § III.I.) Plaintiff Heather Maxin declares "that she "understand[s] the obligations of serving as a Class Representative" and has "and will adequately . . . represent the interest of the putative class." (Maxin Decl. ¶ 7, ECF No. 6-13.) Ms. Maxin has thus far "met with [her] attorneys for the initial consultation, participated in calls regarding fact-finding efforts with [her] attorneys, [and] made [her]self available telephonically for a full day of mediation in case [she] was needed . . . ." (*Id.*) Given the foregoing, the Court concludes that the current Settlement Agreement Class Representative Payment provision should not bar preliminary approval of the Settlement Agreement.

///

## IX. Conclusion

For the reasons stated above, Plaintiff's Preliminary Settlement Motion is **GRANTED**.

### NOTICE OF CLASS CERTIFICATION AND SETTLEMENT

Pursuant to Federal Rule of Civil Procedure 23(c)(2)(B), "[f]or any class certified under Rule 23(b)(3) the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Because the Court has determined that certification is appropriate under Rule 23(b)(3), the mandatory notice procedures required by Rule 23(c)(2)(B) must be followed.

Where there is a class settlement, Federal Rule of Procedure 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.' " *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)); *see also Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120 (8th Cir. 1975) ("[T]he mechanics of the notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process.").

In the present case, the Parties have agreed to notify the Class by four distinct methods: "(1) by mailing or emailing Direct Notice, (2) by establishing a Settlement Website and toll-free number, (3) by providing notice to the Pharmacies that sell Defendant's Products and requesting that they post a copy of the Short-Form Notice on their websites and in their stores, and (4) by Publication Notice" in USA Today. (Prelim. Settlement Mot. 5–7; *see also* Settlement Agreement § III.C–D.) In particular, each notice method directs putative Class Members to the website www.RHGsettlement.com, which will contain "the Long-Form Notice, the Agreement, the Complaint, a Claim Form that can be downloaded, the ability to make a claim online, and any additional relevant documents

as later determined." (Prelim. Settlement Mot. 6–7.) The proposed Long-Form Notice explains, in part: (i) the nature of the action; (ii) the definition of class certified; (iii) the class claims, issues, and defenses; (iv) the proposed Class Member Settlement amounts; (v) that class members may timely object to the proposed Settlement; (vi) that the court will exclude from the class any member who requests exclusion; (vii) the time and manner for requesting exclusion; and (viii) the binding effect of a class judgment on class members under Rule 23(c)(3). (*See generally* Long Form Notice, ECF No. 6-4.)

Having thoroughly reviewed the jointly drafted Notice, the Court finds that the method and content of the Notice comply with Rule 23. Accordingly, the Court approves the Parties' proposed notification plan.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's Preliminary Settlement Motion. The Court **ORDERS** as follows:

**1. PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT AGREEMENT:** The Settlement Agreement is preliminarily approved as fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e).

**2. PRELIMINARY CLASS CERTIFICATION:** Pursuant to Federal Rule of Civil Procedure 23(b)(3), the action is preliminarily certified, for settlement purposes only, as a class action on behalf of the following Settlement Class Members with respect to the claims asserted in this Action:

**Settlement Class:** All Persons who purchased in the United States between August 1, 2012 and the date on which this Order is electronically docketed one or more of Defendant's products that contained an unqualified "Made in USA" label or were otherwise represented as being "Made in USA," including on Defendant's website, brochures, and/or any other marketing materials.

**3. CLASS REPRESENTATIVE, CLASS COUNSEL, AND SETTLEMENT ADMINISTRATOR:** Pursuant to Federal Rule of Civil Procedure 23, the Court preliminarily certifies, for settlement purposes only, Plaintiff Heather Maxin as the Class

Representative, and Abbas Kazerounian of the Kazerouni Law Group, A.P.C. and Joshua B. Swigart of Hyde & Swigart as Class Counsel. Additionally, the Court approves and appoints Kurtzman Carson Consultants as the Claims Administrator.

**4. NOTICE:** The Court preliminarily approves the form and substance of the proposed notice set forth in the Settlement Agreement and the notice forms and corresponding documents attached as Exhibits 1A, 1B, 1F, 1G, and 1H to the Preliminary Settlement Motion. (ECF Nos. 6-3, 6-4, 6-5, 6-9, 6-10, 6-11.) The form and method for notifying the Class Members of the Settlement and its terms and conditions satisfies the requirements of Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e). The Court concludes that the Notice Procedure submitted by the Parties constitutes the best notice practicable under the circumstances. As provided in the Settlement Agreement, the Claims Administrator shall provide notice to the Class Members and respond to Class Member inquiries.

Within thirty (30) days of the date on which this Order is electronically docketed, the Parties **SHALL** disseminate the notices in the forms attached as Exhibits 1A, 1B, 1F, 1G, and 1H to the Preliminary Settlement Motion and in the manner and form provided in the Settlement Agreement and Preliminary Settlement Motion.

**5. FINAL APPROVAL HEARING:** Judge Sammartino shall conduct a Final Approval Hearing on September 28, 2017 at 221 W. Broadway, Courtroom 4D, 4th Floor, San Diego, CA 92101, to consider:

 a. the fairness, reasonableness, and adequacy of the proposed settlement;
 b. Plaintiff's request for the award of attorney fees and costs;
 c. the Class Representative enhancement;
 d. dismissal with prejudice of the class action with respect to Defendant; and
 e. the entry of final judgment in this action.

At the Final Approval Hearing, the Parties shall also be prepared to update the Court on any new developments since the filing of the motion, including any untimely submitted opt-outs, objections, and claims, or any other issues as the Court deems appropriate.

The date and time of the Final Approval Hearing shall be included in the Notice to be mailed to all class members.

**6. MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT:** No later than twenty-one days before the Final Approval Hearing, the Parties shall file a Motion for Final Approval of Class Action Settlement. The Motion shall include and address any objections received as of the filing date. In addition to the class certification and settlement fairness factors, the motion shall address the number of putative Settlement Class members who have opted out and the corresponding number of claims.

**7. APPLICATION FOR ATTORNEY FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARD:** No later than twenty-one days before the Final Approval Hearing, Class Counsel shall file an application for attorney fees, costs, and a class representative service award. Class Counsel shall provide documentation detailing the number of hours incurred by attorneys in litigating this action, supported by detailed time records, as well as hourly compensation to which those attorneys are reasonably entitled. Class Counsel should address the appropriateness of any upward or downward departure in the lodestar calculation, as well as reasons why a percentage-of-the-fund approach to awarding attorney fees may be more preferable in this case. Class Counsel should be prepared to address any questions the Court may have regarding the application for fees at the Final Approval Hearing.

**8. MISCELLANEOUS PROVISIONS:** In the event the proposed settlement is not consummated for any reason, the conditional class certification shall be of no further force or effect. Should the settlement not become final, the fact that the Parties were willing to stipulate to class certification as part of the settlement shall have no bearing on, nor be admissible in connection with, the issue of whether a class should be certified in a non-settlement context.

/ / /

/ / /

/ / /

**9. SCHEDULE:** The Court orders the following schedule for further proceedings:

| Event | Date |
|---|---|
| Defendant to Deliver Class List to Claims Administrator. | Within 5 days of the date on which this Order is electronically docketed. |
| Claims Administrator to (1) Establish Website and Toll-Free Number; (2) Publish Notice of Settlement in USA Today; and (3) Send Notice to Class Members and Relevant Pharmacies. | Within 28 days of the date on which this Order is electronically docketed. |
| Last Day for Class Members to File Request for Exclusion from Settlement. | No later than 90 days from the date on which this Order is electronically docketed. |
| Last Day for Class Members to File Objections to the Settlement. | No later than 90 days from the date on which this Order is electronically docketed. |
| Last Day for Class Members to File Notice of Intention to Appear at Final Approval Hearing. | No later than 100 days from the date on which this Order is electronically docketed. |
| Parties to File Motion for Final Approval. | No later than 21 days before the Final Approval Hearing. |
| Class Counsel to File Motion for Attorney Fees and Costs and Incentive Award. | No later than 21 days before the Final Approval Hearing. |
| Final Approval Hearing. | Thursday, September 28, 2017 at 1:30 p.m. |

**IT IS SO ORDERED.**

Dated: February 27, 2017

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge